UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PALM HILLS PROPERTIES, L.L.C.,
ET AL                                          CIVIL ACTION

VERSUS                                         NUMBER 07-668-RET-SCR

CONTINENTAL INSURANCE COMPANY

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, June 23, 2008.

                                STEPHEN C. RIEDLINGER
                                UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PALM HILLS PROPERTIES, L.L.C.,
ET AL                                    CIVIL ACTION

VERSUS                                   NUMBER 07-668-RET-SCR

CONTINENTAL INSURANCE COMPANY

## MAGISTRATE JUDGE'S REPORT

Before the court is defendant Continental Insurance Company's Partial Motion to Dismiss.  Record document number 9.  The motion is opposed by the plaintiffs Palm Hills Properties, L.L.C. and the Highland Club Apartments, L.L.C.[1]

Plaintiffs filed suit against the defendant to recover losses under a Commercial Crime Policy of insurance issued by the defendant - Policy Number 169933912.[2]  The policy included coverage for employee dishonesty under the EMPLOYEE DISHONESTY COVERAGE FORM (Coverage Form A—Blanket), and coverage for computer fraud under COMPUTER FRAUD COVERAGE FORM (Coverage Form F). Plaintiffs alleged that their losses were based on the conduct of an employee who was an office assistant at the Highland Club Apartments and later promoted to manager.  The employee's duties included showing and renting apartment units, and her compensation included salary,

---

[1] Record document number 15.  Defendant also filed a reply memorandum.  Record document number 19.

[2] Defendant exhibit A, state court Petition, ¶ 2; Defendant exhibit B.

commissions and bonuses of 15% of the gross profit generated through rentals of the apartments.

Plaintiffs claimed that in 2005 the employee initiated a scheme to direct money belonging to the plaintiffs to her own personal account and the accounts of her family and friends. According to the petition, the employee took money for herself, family and friends "through dishonesty involving computer fraud, the unauthorized issuance of checks and unauthorized credit card charges on accounts of Plaintiffs."[3] Part of the employee's scheme allegedly involved misrepresentation of the status of apartment rentals by fabricating documents and computer records and manipulating accounts.  These dishonest acts resulted in the plaintiffs paying the employee unearned bonuses for rentals that did not exist.  Plaintiffs asserted that as a direct result of the employee's dishonest acts, they sustained losses that include money related to unauthorized transactions, payments of unearned bonuses and lost rentals.[4]

Plaintiffs made a claim under the Commercial Crime Policy under both Coverage Forms A and F for losses related to unauthorized credit card charges, checks written to unauthorized individuals and "write offs," improper bonuses, loss of rent, and increased costs associated with audits.  Plaintiffs contended that

---

[3] *Id.* at ¶¶ 3-7.

[4] *Id.* at ¶¶ 8-13.

the defendant has failed and refused to pay for any of their losses. Therefore, the defendant has breached its contractual and legal obligations, and is liable for the covered losses, as well as statutory penalties, attorney's fees and costs under LSA-R.S. 22:658 and LSA-R.S. 22:1220.[5]

## Motion to Dismiss Standard and Applicable Law

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true the well-pleaded factual allegations in the complaint, and views them in the light most favorable to the plaintiff. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, ____ U.S. ____, 128 S.Ct. 1231 (2008). A complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief - including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007), citing, *Bell Atl. Corp. v. Twombly*, ___ U.S.___, 127 S.Ct. 1955, 1964-65 (2007).[6]

---

[5] *Id*. at ¶¶ 17-19.

[6] Plaintiffs stated that a motion to dismiss was not an appropriate procedural vehicle for the defendant's motion because the petition did not incorporate the policy by reference. This
(continued...)

4

The law applicable to this motion to dismiss is the well established law governing interpretation of insurance contracts. Under Louisiana law an insurance policy is a contract that must be construed according to the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 515-16 (5th Cir. 2005). These general rules are:

> Under the Civil Code the judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.  The words of a contract must be given their generally prevailing meaning and when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  Moreover, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. (internal citations and quotations omitted).

*Id*., at 517.

When the language of an insurance policy is clear, the courts do not have the authority to alter its terms under the pretext of interpretation.  *Id*., at 518.  A contract is ambiguous if after applying the rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than one reasonable interpretation. *Riverwood Intern. v. Employers Ins.*

---

⁶(...continued)
argument is without merit. Plaintiffs' petition clearly references the defendant's Commercial Crime Policy and this is the policy attached to the defendant's motion. Moreover, the plaintiffs do not dispute the terms of the policy provisions at issue in the defendant's motion. *See*, *In re Katrina*, 495 F.3d at 205(documents defendant attaches to motion to dismiss considered part of pleadings if referenced in plaintiff's complaint and central to claim).

*of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).  If there is any ambiguity within an exclusionary provision or the policy as a whole it must be construed against the insurer and in favor of coverage. *Coleman*, 418 F.3d at 517, *citing*, *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801 (La. 2/25/04), 869 So.2d 96, 100.  Whether contract language is clear or ambiguous is a question of law. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

It is well settled Louisiana law that all insurance contract exclusion provisions are construed strictly against the insurer, any ambiguity is construed in favor of the insured, and the insurance provider has the burden of proving that an exclusion unambiguously applies.  *Cochran v. B.J. Services Co. USA*, 302 F.3d 499, 502 (5th Cir. 2002).  At the same time, the rule of strict construction does not permit a perversion of language or the exercise of inventive powers to create ambiguity where none exists. *Id*.

## Analysis

**Coverage - EMPLOYEE DISHONESTY COVERAGE FORM (Coverage Form A)**

Defendant argued that the facts alleged regarding the plaintiffs' loss of rental income cannot satisfy the definition of of "Employee Dishonesty" contained in the policy.  Defendant argued that the allegations show the intent of the employee in covering up not renting the apartments was to obtain compensation and bonuses for herself.  Compensation and bonuses are clearly not included in

6

the definition of "financial benefit," that is part of the definition of "Employee Dishonesty."  Defendant also asserted that the rental income losses suffered by the plaintiff are excluded from coverage under the "Indirect Loss" exclusion contained in the policy's CRIME GENERAL PROVISIONS.

Plaintiffs contended that the policy does not define "loss," and the policy definition of "Occurrence" means "all loss" caused by the employee as a result of a single act or series of acts.[7] The employee's dishonest scheme or series of acts caused various types of losses, one of which was loss of rent.  Therefore, under the plain language of the policy, it is incorrect to isolate the loss of rental money and claim that this loss is not covered because the cause of the loss was the employee's failure to rent the apartments.  Plaintiffs also argued that the loss of rental money is not excluded under the general policy provisions as an "Indirect Loss."  Plaintiffs again pointed out that "loss" is not defined in the policy, and also that no where in the policy is the loss limited to the amount of financial gain that is obtained by the employee.  Plaintiffs maintained that this particular loss was a direct result of the employee's dishonesty, and not an indirect result of the loss of some other "Covered Property."

Substituting the policy definitions for "Covered Property,"

---

[7] Commercial Crime Policy, Employee Dishonesty Coverage Form (Coverage Form A—Blanket), Part D.3.b.

and "Covered Cause of Loss," Part A of Coverage Form A-Blanket provides as follows: "We will pay for loss of, and loss from damage to, '[m]oney, securities, and property other than money and securities,' resulting directly from the '[e]mployee dishonesty.'" Under Part D.3.a., Additional Definitions, "Employee Dishonesty" is defined as follows:

> "**Employee Dishonesty**" in paragraph **A.2.** means only dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:
>
> (1) Cause you to sustain loss; and also
>
> (2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:
>
>> (a) The "employee"; or
>>
>> (b) Any person or organization intended by the "employee" to receive that benefit.

In light of these provisions, it is apparent that the dishonest acts alleged in paragraphs 8, 9, 10 and 13 of the petition cannot satisfy the policy's definition of "Employee Dishonesty." The facts alleged in these paragraphs describe dishonest acts involving the employee's misrepresentation of the status of apartment rentals. According to the plaintiffs' petition, in order to make it appear that the leases were still in place and the apartments were occupied, the employee would fabricate documents and computer records when the leases expired

and the tenants left, not pay expenses, move money from the escrow to the operating account, and move money into an account for receipt of profits from rentals.  Plaintiffs alleged that the employee engaged in this dishonest scheme to create "phantom income" and "false profit," in order to induce the plaintiffs to pay her salary and bonuses she had not earned and was not entitled to receive.

Under the policy description of "Employee Dishonesty," the dishonest acts must be committed with the manifest intent to both cause the insured to sustain loss, and obtain financial benefit for the employee.  However, the financial benefit cannot be "employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions."  In this case, the alleged intended result of the dishonest acts described in paragraphs 8-10 and 13, was to obtain salary and bonuses.[8]  Plaintiffs rely on the fact the definition of "Occurrence" means "all loss", and fail to address the specific policy language that clearly and unambiguously excludes these types of employee benefits from the definition of "Employee Dishonesty."  The plain language of the policy clearly excludes salary or commissions from the "financial benefit" found

---

[8] The policy does not define salary or bonuses.  However, the parties do not contend that there is any ambiguity in the meaning of these terms, and in their petition the plaintiffs used these exact words to describe the benefits obtained by the employee.

in the definition of "Employee dishonesty."[9]

In summary, the plaintiffs' allegations with regard to the concealment and misrepresentation of apartment rentals to obtain salary and bonuses fall outside the policy description of "financial benefit," and consequently cannot satisfy the policy definition of "Employee Dishonesty."  Under Coverage Form A-Blanket, the policy only pays for loss resulting directly from "Employee Dishonesty" as defined in the policy.  Therefore, the defendant is not obligated to pay for the loss of rental income resulting from these alleged dishonest acts under Coverage Form A-Blanket.[10]

**Coverage - COMPUTER FRAUD COVERAGE FORM (Coverage Form F)**

Defendant argued that the plaintiffs cannot recover for any losses resulted directly from computer fraud under the COMPUTER FRAUD COVERAGE FORM (Coverage Form F).  Defendant relied on the exclusion which states in Part D.1.a. that the insurer will not pay

---

[9] Neither side cited any Louisiana cases to support their position.  Defendant cited several cases from other jurisdictions which interpret the same policy language.  Record document number 9-2, supporting memorandum, pp. 6-7.  Those cases support the view that the terms are clear and unambiguous, and plainly means that the definition of employee dishonesty includes obtaining a financial benefit, but the benefit must be one other than benefits earned in the normal course of employment such as salary and commissions.  *See*, *Performance Autoplex II Ltd. v. Mid-Continent Cas.*, 322 F.3d 847, 856-58 (5th Cir. 2003).

[10] Since there is no coverage, it is unnecessary to address the defendant's alternative argument that the loss of rent is excluded as an "Indirect Loss" under the policy's GENERAL PROVISIONS.

for loss "resulting from any dishonest or criminal act committed by any of your 'employees',[11] directors, trustees or authorized representatives," acting alone or in collusion with other persons, or while performing services for the insured or otherwise. Plaintiffs did not dispute the terms of the exclusion relied on by the defendant, but argued that the only claims that can be denied under the exclusion are those that satisfy the definition of "Computer Fraud" contained in Coverage Form F.[12]

There is no ambiguity in the exclusion cited by the defendant. Coverage Form F clearly and explicitly excludes coverage for loss resulting from dishonest or criminal acts perpetrated by any of the insured's employees.  Plaintiffs alleged that their employee engaged in dishonest/criminal acts for which they are claiming coverage under two of the policy endorsements, one of which is Coverage Form F.  Under the exclusion for "Acts of Employees, Directors, Trustees or Representatives," the defendant cannot be obligated to pay for any losses caused by the plaintiffs' employee which resulted directly from "Computer Fraud."

---

[11] The term "Employee" is defined in Part C.1. of GENERAL DEFINITIONS.  Plaintiffs did not dispute that their employee meets the policy's definition of "Employee."

[12] Coverage Form F defines "Computer Fraud" as "'theft' of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the 'premises' or 'banking premises' to a person (other than a 'messenger') outside those 'premises' or to a place outside those 'premises.'"

11

**Recommendation**

It is the recommendation of the magistrate judge that the Partial Motion to Dismiss filed by defendant Continental Insurance Company be granted, dismissing the plaintiffs' claims under Policy No. 169933912 for loss of rental income under EMPLOYEE DISHONESTY COVERAGE FORM (Coverage Form A-Blanket), and for all losses resulting directly from computer fraud under COMPUTER FRAUD COVERAGE FORM (Coverage Form F).

Baton Rouge, Louisiana, June 23, 2008.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE